DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**LEAH VITRANO,** as Personal Representative of the Estate of Nicholas
Vitrano, deceased,
Appellant,

v.

**FLORIDA POWER & LIGHT COMPANY,**
Appellee.

No. 4D13-2370

[March 25, 2015]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm
Beach County; Meenu Sasser, Judge; L.T. Case No.
502010CA002538XXXXMB.

Margaret M. Bichler and Kevin C. Smith of Lytal, Reiter, Smith, Ivey &
Fronrath, LLP, West Palm Beach, for appellant.

Jane Kreusler-Walsh and Stephanie L. Serafin of Kreusler-Walsh,
Compiani & Vargas, P.A., West Palm Beach, and Eric R. Hoecker and
David Austin, Juno Beach, for appellee.

*ON MOTION TO CERTIFY QUESTION OF GREAT PUBLIC IMPORTANCE AND
REQUEST FOR WRITTEN OPINION*

WARNER, J.

We deny appellant's motion to certify question of great public
importance, withdraw our summary affirmance, and substitute the
following opinion in its place.

Appellant challenges an adverse jury verdict finding Florida Power &
Light ("FPL") not negligent for the electrocution death of appellant's
husband while he was trimming a tree. The dispositive issue for this court
is whether the trial court erred in refusing to give a negligence per se jury
instruction for violations of the National Electric Safety Code ("NESC").
The trial court found that the deceased was not among the class of persons
the particular NESC provisions were designed to protect. Instead, they

were intended to protect the general public, which did not require a negligence per se instruction. We agree and affirm.

A homeowner sought to have his trees trimmed and hired the decedent to do the work. A few days earlier, FPL had visited the homeowner's property and observed that fronds on the homeowner's palm trees were in close proximity to the power lines. The FPL representative told the homeowner that FPL would have the two trees nearest the power line trimmed, but the homeowner declined. He already had arranged to have the contractor trim all the palm trees in his yard. FPL did not warn the homeowner that the tree near the power line was a hazard and not to have the tree trimmed, nor did it provide any guard on the power line.

Subsequently, the decedent and his employees began trimming the trees on the homeowner's property. Decedent mounted a ladder while a helper held its base. The helper heard a sound like electricity and saw the decedent fall from the ladder to the ground. When the helper looked up, he saw that the palm fronds were very close to the power line and even appeared to be in contact with it. The ends of the palm fronds were dark as if they had been burned. The decedent died as a result of the electric shock or as a result of the fall.

Appellant, decedent's wife and personal representative, sued FPL for compensatory damages alleging FPL had actual knowledge of the dangerous condition caused by the palm frond touching the power line. She claimed that FPL was negligent for creating the dangerous condition by permitting the trees to grow up and through FPL's power lines and then for failing to trim or maintain the trees near the power lines. She also alleged that FPL failed to warn of the danger.

At trial, appellant sought to prove a violation of two provisions of the NESC, sections 214 (dealing with inspection and testing of lines) and 218 (dealing with tree trimming). The pertinent part of section 214 provides:

> 214. Inspection and Tests of Lines and Equipment
>
> A. When in service
>
> ***
>
> 4. Record of Defects
>    Any defects affecting compliance with this Code revealed
>    by inspection or tests, if not promptly corrected, shall be

2

recorded; such records shall be maintained until the defects are corrected.

5. Remedying Defects
   Lines and equipment with recorded defects that could reasonably be expected to endanger life or property shall be promptly repaired, disconnected, or isolated.

Section 218 relates to tree trimming and provides:

A. General

   a. Vegetation that may damage ungrounded supply conductors should be pruned or removed. Vegetation management should be performed as experience has shown to be necessary.

   *NOTE*: Factors to consider in determining the extent of vegetation management required include, but are not limited to: line voltage class, species' growth rates and failure characteristics, right-of-way limitations, the vegetation's location in relation to the conductors, the potential combined movement of vegetation and conductors during routine winds, and sagging of conductors due to elevated temperatures or icing.

   b. Where pruning or removal is not practical, the conductor should be separated from the tree with suitable materials or devices to avoid conductor damage by abrasion and grounding of the circuit through the tree.

Appellant's expert opined that the hazard of the tree and its fronds so close to the power line constituted a "defect" which was not promptly remedied by FPL. In contrast, FPL's expert testified that this section did not apply because the tree was not a defect within the meaning of the code. He opined that section 214 dealt with defects in equipment, and he gave examples such as a broken insulator, sagging lines, rotten or broken poles.

With respect to tree trimming, appellant's expert testified that section 218 required FPL to remove vegetation that could damage the power lines. The FPL expert testified that no violation of section 218 occurred, because the thrust of that section was to prevent damage to the conductors itself, and the palm fronds at the time were not a danger to the lines.

3

At the charge conference, appellant requested an instruction that any violation of the NESC by FPL would constitute negligence per se. The court declined to give the instruction, because it concluded that the deceased was not in the particular class of persons those provisions were meant to protect. Instead, it instructed the jury that violation of those code provisions would be evidence of negligence.

The jury returned a verdict finding that there was no negligence on the part of FPL which was the cause of Nicholas Vitrano's death. The court denied a motion for new trial and entered judgment in favor of FPL, resulting in this appeal.

Appellant contends that the court erred in failing to instruct the jury that violation of the NESC code provisions would constitute negligence per se.

> A decision to give or withhold a jury instruction is to be reviewed under the abuse of discretion standard of review. The party defending the instructions on appeal must show that the requested instructions accurately stated the applicable law, the facts supported giving the instruction, and that the instruction was necessary in order to allow the jury to properly resolve all the issues in the case.

*Barton Protective Servs., Inc. v. Faber*, 745 So. 2d 968, 974 (Fla. 4th DCA 1999).

*DeJesus v. Seaboard Coast Line R.R. Co.*, 281 So. 2d 198, 200-01 (Fla. 1973), established three categories of statutory or code violations and determined that two of those categories would result in negligence per se, but the third would not. First, where a statute imposes strict liability designed to protect a particular class of persons unable to protect themselves, a violation of the statute would constitute negligence per se. Second, "a violation of any other statute which establishes a duty to take precautions to protect a particular class of persons from a particular injury or type of injury" will also amount to negligence per se where the injured person establishes that "he is of the class the statute was intended to protect, that he suffered injury of the type the statute was designed to prevent, and that the violation of the statute was the proximate cause of his injury." *Id.* at 201. Finally, violation of any other type of statute constitutes evidence of negligence, not negligence per se. *Accord Chevron U.S.A., Inc. v. Forbes*, 783 So. 2d 1215, 1219 (Fla. 4th DCA 2001).

4

The Florida legislature enacted section 366.04, Florida Statutes (1986), adopting the NESC standards for electric utilities. In essence, the NESC protects: (1) employees or contractors installing, operating, or maintaining the electrical lines and equipment, and (2) the public. NESC section 1, subsection 10 states its purpose as follows:

> The purpose of these rules is the practical safeguarding of persons during the installation, operation, or maintenance of electrical supply and communication lines and their associated equipment.

> These rules contain the basic provisions that are considered necessary for the safety of employees and the public under the specified conditions.

Although appellant contends that the decedent fell within the first category of persons, meaning a violation of this statute is negligence per se under *deJesus*, we disagree. He was not a person installing, operating or maintaining the electric lines or equipment, the particular class of persons designated in the code. He was, instead, part of the general public which might come in contact with dangerous electric lines in a great variety of ways. The deceased was a tree trimmer contracting with the homeowner to trim trees in his yard, not for the purpose of maintaining electric lines but for the personal interests of the homeowner.

With respect to NESC section 214, that provision requires reporting and remedying "defects." We first question whether this provision applies at all, because the lines and equipment had no defects. A hazard may have been present as a result of the proximity of the palm fronds to the lines, but this would not amount to a "defect" in the line or equipment. Appellant has cited no case law to show that hazards constitute "defects" within the meaning of NESC section 214.

Assuming its application, NESC section 214 requires FPL to inspect and discover defects in its lines and equipment and to remedy these defects promptly. This general regulation is not intended to protect a particular class of persons from a specific type of injury. Its general provisions create a duty on FPL to keep its equipment in good repair. It does not create a duty to take precautions to protect a *particular* class of persons from a particular type of injury.

Section 218 requires the trimming of trees to protect the electrical lines. It does not establish any safety procedures regarding how to trim the trees. And while it places a duty on the electric company to trim the trees, the

code provision is not for the protection of the tree trimmer but for the general public who might come into contact with the vegetation close to the power lines in a variety of ways, such as children climbing trees. It also is directed to the protection of the equipment of the power company from the danger of contact between the trees and the power line.

These provisions are unlike the statute in *deJesus*, for instance, which required the placing of warning lights on trains stopped at railroad crossings after sunset to alert motorists of the obstruction caused by the train. *deJesus*, 281 So. 2d 200. The court held that violation of this statute constituted negligence per se, because it protected against a particular class of persons (motorists crossing railroad tracks after dark) from a particular injury (colliding with a stopped train). *Id.* at 201. Nor are the NESC code sections like the provisions of section 399.02(5)(b), Florida Statutes, providing an owner with the responsibility for the proper maintenance of an elevator. Our court held that violation of that section constituted negligence per se, because it was intended to protect a particular class of persons (passengers in the elevator) from particular injuries (those which occur when the elevator malfunctions or falls). *See Reliance Elec. Co., Haughton Elevator Div. v. Humphrey*, 427 So. 2d 214, 214-15 (Fla. 4th DCA 1983); *accord Golden Shoreline Ltd. P'ship v. McGowan,* 787 So. 2d 109, 111 (Fla. 2d DCA 2001). Here the NESC provisions were not directed to a particular category of persons.

We therefore conclude that the trial court did not err in refusing to instruct the jury that violation of these statutes was negligence per se. As such, we affirm the final judgment.

CIKLIN and GERBER, JJ., concur.

* * *

***Not final until disposition of timely filed motion for rehearing.***